## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **CAROLYN GRIMES,** *Individually and as Administratrix and Personal Representative of the Estate of Jerry A. Grimes, deceased, and as a dependent survivor of Jerry A. Grimes***,** | ) ) ) ) ) |
| Plaintiff, | ) |
| **vs.** | ) |
| **AMTEC CORPORATION,** *et al.***,** | ) |
| Defendants. | ) |

Civil Action Number
**5:12-cv-01144-JEO**

## REPORT AND RECOMMENDATION

This action is before the court on plaintiff Carolyn Grimes's Motion to Remand the case to the Circuit Court of Madison County. (Doc. 21). The matter has been briefed by the parties and is appropriate for resolution. (Docs. 40-43, 53-55). Upon consideration, the court finds that the motion is due to be granted and, therefore, the action is due to be remanded to the Circuit Court of Madison County, Alabama.

## I. BACKGROUND

This action arises from a May 5, 2010, accident in Madison County, Alabama, in which a decanter centrifuge exploded and caused fatal injuries to plaintiff's husband, Jerry A. Grimes. (Doc. 1-1). At the time of the accident, Grimes was working on a project at Redstone Arsenal for defendant Amtec Corporation. (*Id*. at 9). Plaintiff subsequently filed this action in the Circuit Court of Madison County, alleging workers' compensation claims against Amtec Corporation and Employers Claims Management Inc., and wrongful-death and breach-of-warranty claims against U.S. Centrifuge Corporation, U.S. Centrifuge Systems, Inc., U.S. Innovation Group, Inc.,

U.S. Centrifuge d/b/a U.S. Innovation Group, Inc., Centriquip, Ltd., Ashbrook Simon-Hartley,

Ltd., Ashbrook Simon-Hartley, Ltd., d/b/a Centriquip, Ltd., Dr. William Albritton, Scott

Albritton, Gene Jordan, Tom Chandler, Steve Ward, and numerous fictitious defendants.  (Doc.

1-1 at 2).  On March 16, 2012, plaintiff moved the circuit court for leave to amend the Complaint

to add Ashbrook Simon-Hartley, LP, Ashbrook Simon-Hartley Operations LP, and Ashbrook

Simon-Hartley Operations GP, LLC, as additional defendants.  (Doc. 1-5 at 2).  The circuit court

granted that motion, and plaintiff filed the First Amended Complaint on March 21, 2012.  (Doc.

1-6 at 2).

The three subsequently added defendants, Ashbrook Simon-Hartley, LP, Ashbrook

Simon-Hartley Operations, LP, and Ashbrook Simon-Hartley Operations GP, LLC, removed the

case to this court on April 17, 2012, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 16 U.S.C. §

457.  (Doc. 1).  The removing defendants particularly asserted that this court has original and

exclusive jurisdiction over the case under federal-enclave jurisdiction, and, therefore, the case is

removable under 28 U.S.C. § 1441(a).[1]  (*Id*. at 2).  Additionally, these defendants asserted that

this court has original and exclusive jurisdiction of this case pursuant to 16 U.S.C. § 457 because

Jerry Grimes's death occurred within a place subject to the exclusive jurisdiction of the United

States.[2]  (*Id*. at 3).  The same day, April 17, 2012, defendant U.S. Innovation Group, Inc., filed a

---

[1]Section 1441(a), *Removal of civil actions*, provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

[2]Section 457, *Action for death or personal injury within national park or other place under jurisdiction of United States; application of State laws*, provides:

notice to join the removing defendants in removing the action to this court pursuant to 28 U.S.C. § 1446 and 16 U.S.C. § 457.[3] (Doc. 4). On May 3, 2012, defendants Amtec Corporation, Employers Claims Management, Inc., Dr. William Albritton, Scott Albritton, Gene Jordan, Tom Chandler, and Steve Ward filed a notice that they did not consent and have not consented to the removal of this action. (Doc. 13).

On May 15, 2012, plaintiff moved to remand the action back to the Circuit Court of Madison County. (Doc. 21). The removing defendants and defendant U.S. Innovation Group, Inc., responded in opposition to the motion. (Docs. 40 & 41). Plaintiff then replied. (Docs. 42 & 43). Plaintiff filed a notice of supplemental authority (doc. 53) in support of the remand, and certain defendants filed responses in opposition (doc. 54 & 55).

## II. STANDARD OF REVIEW

A civil action filed in a state court may be removed to federal court only if the district court would have had jurisdiction over the case had the case been brought there originally. *See* 28 U.S.C. § 1441(a). District courts, of course, have original jurisdiction over diversity matters and matters arising under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. §§ 1331, 1332. Because there is no contention in this case of diversity of citizenship between the parties, federal jurisdiction must rest, if at all, on federal-question jurisdiction. *See* 28 U.S.C. §

---

In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.

[3]This notice of removal/joinder was originally filed as a separate removal on April 17, 2012, and then docketed into the present action on April 19, 2012.

3

1331.

Because federal courts are courts of limited jurisdiction, the parties seeking removal carry the burden of showing the propriety of this court's removal jurisdiction. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), *cert. denied*, 520 U.S. 1162 (1997). Additionally, "[a] court must strictly construe the requirements of the removal statute, as removal constitutes an infringement on state sovereignty." *Newman v. Spectrum Stores, Inc.*, 109 F. Supp. 2d 1342, 1345 (M.D. Ala. 2000). The Eleventh Circuit has explained that a "[d]efendant's right to remove and plaintiff's right to choose his forum are not on equal footing." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Therefore, any ambiguities are to be construed against removal because the removal statutes should be strictly construed in favor of remand. *See id.* "When a plaintiff questions the propriety of a defendant's removal petition, the defendant bears the burden of showing that the removal was proper." *Newman*, 109 F. Supp. 2d at 1345.

### III.  ANALYSIS

The removing defendants' central argument is that federal-enclave jurisdiction provides the court subject-matter jurisdiction because the incident arose on Redstone Arsenal and that this jurisdiction is exclusive of the state courts pursuant to Art. I, § 8, cl. 17, U.S. CONST., and 16 U.S.C. § 457. To understand the application of federal-enclave jurisdiction, a background of the existence of federal enclaves and the formation of Redstone Arsenal is helpful. In 1943, the State of Alabama ceded land in Madison County to the United States for creation of Redstone Arsenal. *See Alabama-Tennessee Natural Gas Co. v. City of Huntsville*, 153 So. 2d 619, 625 (Ala. 1963) ("Redstone Arsenal was ceded to the Federal Government by the State of Alabama."). The cessation occurred consistent with Article I, § 8, cl. 17, U.S. CONST., which

4

provides Congress the power to <u>exclusively legislate</u> "all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, <u>Arsenals</u>, dock-Yards, and other needful Buildings."  (emphasis added).

The places listed in clause 17 are considered "'federal enclaves' within which the United States has exclusive jurisdiction." *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998).  The Supreme Court has explained that "if the United States acquires with the 'consent' of the state legislature land within the borders of that State by purchase or condemnation for any of the purposes mentioned in Art. I, § 8, cl. 17 ... the jurisdiction of the Federal Government becomes 'exclusive.'" *Paul v. United States*, 371 U.S. 245, 264 (1963).  However, the law is well established that "the jurisdiction acquired from a state by the United States whether by consent to the purchase or by cession may be qualified in accordance with agreements reached by the respective governments." *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 99 (1940).  The Patent of Cessation for Redstone Arsenal made several qualifications and states in relevant part:

> I, Chauncey Sparks, as Governor of the State of Alabama, in the name and on behalf of the State of Alabama, and in accordance with the laws of said State, do hereby cede unto the United States of America exclusive jurisdiction over land comprising the site of the Huntsville Arsenal, and also the site of the Redstone Arsenal, all situate[d] in Madison County, State of Alabama, and more particularly described as follows:

> . . .

> PROVIDED, That the jurisdiction so ceded shall not prevent the execution upon such lands of any process, civil or criminal, issued under the authority of this State, except as such process might affect the property of the United States thereon.

> PROVIDED, FURTHER, That the State of Alabama expressly reserves the right to tax all persons, firms, corporations, or associations now or hereafter residing or located upon said land, to tax or exercise by any person, firm,

5

corporation, or association of any and all rights, privileges, and franchises upon said land, and to tax property of all persons, firms, corporations, or associations situated upon said land.  The jurisdiction ceded is for the purpose of cession, and none other, and shall continue during the time the United States shall be or remain the owner thereof and shall use such land for the purposes of cession, and the State of Alabama expressly reserves the right to exercise over or upon any such land any and all rights, privileges, powers, or jurisdiction which may now or hereafter be released or receded by the United States to the State.

(Doc. 1-7 at 2-8).

With the creation of federal enclaves, a need arose "to provide a source of law to claims for personal injuries sustained on land that was ceded by one sovereign (*e.g.*, a state) to the exclusive jurisdiction of another sovereign (*e.g.*, the United States)."  *Sinicki v. General Elec. Co.*, No. 1:05-cv-508, 2005 WL 1592961, *3 (N.D.N.Y. 2005).  In simple terms, to prevent a legal void, "the preexisting State law becomes federal law."  *Pratt v. Kelly*, 585 F.2d 692, 695 (4th Cir. 1978) (citing *Sadrakula*, 309 U.S. at 99-101).  Therefore, when the State of Alabama ceded the land to the United States, Alabama law, by virtue of Alabama sovereignty, ceased to exist, but the substance of the law remained in effect as federal law, by virtue of the sovereignty of the United States.  *See Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1953)[4] (citing *Chi., Rock Island & Pac. Ry. Co. v. McGlinn*, 114 U.S. 542, 546-47 (1885)); *Stokes v. Adair*, 265 F.2d 662, 664 (4th Cir. 1959) ("[A]lthough the laws of the states governing the private rights of individuals persist in the ceded territories, they do not derive their authority from the state but from the Federal Government which has acquired exclusive legislative jurisdiction."). Additionally, 16 U.S.C. § 457 provides that personal injury and wrongful-death actions involving events occurring "within a national park or other place subject to the exclusive jurisdiction of the United States,

_____

[4]Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

within the exterior boundaries of any State" shall be maintained as if the place were under the
jurisdiction of the State and that "<u>the rights of the parties shall be governed by the laws of the</u>
<u>State within the exterior boundaries of which it may be</u>."  (emphasis added).

      Because the source of the law for claims sustained on federal enclaves becomes the
United States, courts have reasoned that federal courts must also have subject-matter jurisdiction
over controversies that arise on such enclaves.  *See Durham v. Lockheed Martin Corp.*, 445 F.3d
1247, 1250 (9th Cir. 2006); *Akin*, 156 F.3d at 1034; *Mater*, 200 F.2d at 124.  Such jurisdiction is
known as federal-enclave jurisdiction and constitutes a subspecies of federal-question
jurisdiction pursuant to 28 U.S.C. § 1331.  In *Mater*, the former Fifth Circuit reversed a district
court's dismissal of an action arising within the boundaries of Fort McPherson, Georgia, for lack
of subject-matter jurisdiction by reasoning that "[i]t would be incongruous to hold that although
the United States has exclusive jurisdiction in the area here involved, its courts are without
power to adjudicate controversies arising there."  200 F.2d at 124.  Relying on *Mater*, the Court
of Appeals for the Tenth Circuit has more recently held that "[p]ersonal injury actions which
arise from incidents occurring in federal enclaves may be removed to federal district court as part
of federal question jurisdiction."  *Akin*, 156 F.3d at 1034.  Likewise, the Ninth Circuit has held
that "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal
enclaves.'"  *Durham*, 445 F.3d at1250 (citing 28 U.S.C. § 1331; *Willis v. Craig*, 555 F.2d 724,
726 n. 4 (9th Cir. 1977) (*per curiam*); *Mater*, 200 F.2d at 125).  *See also Parker v. Main*, 804 F.
Supp. 284, 286 (M.D. Ala. 1992) (holding that a defamation action arising on a federal enclave
"invokes this court's federal question jurisdiction under 28 U.S.C.A. § 1331").

      Consistent with *Mater*, *Akin*, and *Durham*, this court has federal-question jurisdiction

7

over plaintiff's claims for personal injuries sustained on Redstone Arsenal, a federal enclave. The more specific issue in addressing plaintiff's motion to remand, however, is whether this court's jurisdiction is <u>exclusive of the state courts</u> for this action.  Stated another way, this court must determine whether concurrent state and federal jurisdiction exists because if concurrent jurisdiction exists, the removing defendants must have followed the procedural requirements for removal outlined in 28 U.S.C. § 1446.  Plaintiff contends that this court has concurrent jurisdiction with the state courts and that principles of comity and deference to plaintiff's choice of forum favor remand.  In support of this contention, plaintiff contends that the removal of this action fails to comply with numerous procedural requirements of § 1446 and that the state court is competent to resolve the underlying claims.  (Doc. 21 at 2-4).  As another basis for remand, plaintiff contends that under former 28 U.S.C. § 1441(c), the court, in its discretion, and especially in light of the procedural defects associated with the removal, should remand all plaintiff's claims and causes of action because state law predominates.  (*Id.* at 5).

Plaintiff contends that courts have consistently construed Art. I, § 8, cl. 17 to confer concurrent state and federal jurisdiction to adjudicate tort claims arising in federal enclaves. (Doc. 22 at 4).  In support, plaintiff relies on the following cases: *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990); *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 477-78 (1981); *Ohio River Contract Co. v. Gordon*, 244 U.S. 68 (1917); *Stokes*, 265 F.2d at 666; *Mater*, 200 F.2d at 124; *Mendoza v. Neudorfer Engineers, Inc.*, 145 Wash. App. 146, 185 P.3d 1204 (Wash. App. 2008); *Red Top Cab Co. v. Capps*, 270 S.W.2d 273 (Tex. Civ. App. 1954); and *In re Air Crash Disaster at Gander, Newfoundland, on December 12, 1985*, 660 F. Supp. 1202, 1207-08 (W.D. Ky. 1987). (Doc. 22 at 4-6).  None of these cases address the precise situation here, *i.e.*, a motion to remand

an action alleging claims for personal injuries sustained on a federal enclave.  However, these cases embrace the proposition that "[n]othing inherent in exclusive federal sovereignty over a territory precludes a state court from entertaining a personal injury suit concerning events occurring in the territory and governed by the federal government."  *Gulf Offshore Co.*, 453 U.S. at 481.

Of the cases cited by plaintiff, *Mendoza* is the most similar to the instant action because it also concerns a state action that arose on a federal enclave subject to Art. I, § 8, cl. 17.  145 Wash. App. at 148-50, 185 P.3d at 1206.  There, a civilian laborer commenced an action in a state court in Washington, seeking damages for an injury he allegedly suffered while working on Fort Lewis.  *Id.*, 145 Wash. App. at 149, 185 P.3d at 1206.  The Court of Appeals for Washington reversed the trial court's dismissal of the action for lack of subject-matter jurisdiction by holding that "exclusive jurisdiction in the sense of exclusive sovereignty does not divest state courts of jurisdiction over personal injury causes of action."  *Id.*, 145 Wash. App. at 151, 185 P.3d at 1207.  In support for this conclusion, the appellate court relied on the Supreme Court's holding in *Tafflin* that "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."  *Id.* (quoting *Tafflin*, 493 U.S. at 458).  The court also relied extensively on the Supreme Court's decision in *Gulf Offshore*.  *Mendoza*, 145 Wash. App. at 151-52, 185 P.3d at 1207-08.

In *Gulf Offshore*, the Supreme Court determined "whether federal courts have exclusive jurisdiction over personal injury and indemnity cases arising under the Outer Continental Shelf Lands Act, 67 Stat. 462, as amended, 43 U.S.C. § 1331 *et seq.* (1976 ed. and Supp. III)."  453 U.S. at 475.  Similar to federal enclaves subject to Art. I, § 8, cl. 17, the land within the Outer

9

Continental Shelf is an area of "'exclusive federal jurisdiction.'"  453 U.S. at 479 (quoting 43 U.S.C. § 1333(a)(1)).  Additionally, the Outer Continental Shelf Lands Act ("OCSLA") grants United States district courts "'original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf....'"  *Id*. at 478-79 (quoting 43 U.S.C. § 1333(b)).

In determining the jurisdictional parameters in *Gulf Offshore*, the Supreme Court provided helpful background language on the propriety of state-court jurisdiction in claims arising on federal lands.  Particularly, the Court held that "the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action."  *Gulf Offshore*, 453 U.S. at 478-79.  "Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly," but such a limitation should be expressed "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests."  *Id*. at 478.  The Court then applied these factors to the facts and determined that "nothing in the language, structure, legislative history, or underlying policies of OCSLA suggests that Congress intended federal courts to exercise exclusive jurisdiction over personal injury actions arising under OCSLA."  *Id*. at 484.

Applying the same factors here, the court sees no basis to find that the reference to exclusive jurisdiction in Art. I., § 8, cl. 17, or the requirement for application of federal law found in 16 U.S.C. § 457, extends the exclusive legislative jurisdiction to oust Alabama state courts from concurrent jurisdiction over this action.  First, the removing defendants do not direct the court to any statutory directive confining jurisdiction over matters arising on Redstone

Arsenal to the federal courts.  Second, the removing defendants have not presented any legislative history indicating that Congress intended to confine jurisdiction over incidents arising on arsenals to the federal courts or to exclude the state courts.  Third, there is not a clear incompatibility between state-court jurisdiction and federal interests.  In fact, even though the applicable law is deemed federal law, the substance of the laws at issue here originated from Alabama law.

In the final analysis, this court cannot ignore the lack of an express grant either by statute or the cessation papers of exclusive jurisdiction to the federal courts and the Supreme Court's explanation in *Gulf Offshore* that the fact that "the location of the event giving rise to the suit is an area of exclusive federal jurisdiction rather than another State, does not introduce any new limitation on the forum State's subject-matter jurisdiction."  453 U.S. at 481-82.  Alabama courts are competent to handle these claims and, as noted by the Supreme Court in *Gulf Offshore*, "[s]tate courts routinely exercise subject-matter jurisdiction over civil cases arising from events in other States."  *Id.* at 481.  *See also Tafflin*, 493 U.S. at 458.  Accordingly, this court finds concurrent jurisdiction with the state court and that the state action is subject to removal under federal-question jurisdiction.  *See* 28 U.S.C. §§ 1441 and 1331.  As such, the removal must comply with the removal procedures found in § 1446.  Thus, the court now turns to plaintiff's arguments about the alleged procedural defects with the removals.

As an initial matter, the court notes that the notices of removal are premised on the theory that this court's jurisdiction is original and exclusive with omission to express references to the procedural requirements of § 1446.  (Docs. 1 & 4).  This omission may have resulted because, if the theory of exclusive jurisdiction had proved to be correct, the removing defendants would not

have needed to comply with the procedural requirements of § 1446, including obtaining the consent of all the then-served defendants.  Plaintiff now argues that the court should remand the case because the removal violated several procedural requirements of former § 1446.[5]  (Doc. 22 at 2).  Additionally, plaintiff argues that this court should exercise its discretion under § 1441(c) and remand the action because state-law claims predominate.  (*Id.* at 4).

The court first addresses whether the removals satisfied the consent requirements of § 1446.  In short, former § 1446(a) "require[d] that each defendant file a notice of removal, either independently or by unambiguously joining in or consenting to another defendant's notice, with the 30-day period following service of process."  *Miles v. Kilgore*, 928 F. Supp. 1071, 1076 (N.D. Ala. 1996).  Indeed, within the Eleventh Circuit "the law is well settled that in cases involving multiple defendants, all defendants must consent to the removal of a case to federal court."  *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1049 (11th Cir. 2001).  *See also Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349*, 427 F.2d 325, 326-27 (5th Cir. 1970) ("The law is clear that under 28 U.S.C. § 1446(a), removal procedure requires that all defendants join in the removal petition.").  In considering the application of the last-served defendant rule on the rule of unanimity, the Eleventh Circuit provided helpful guidance in situations in which defendants are served at various times:

> The unanimity rule requires that all defendants consent to and join a notice of removal in order for it to be effective.  *See Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001).  The last-served rule is not inconsistent

---

[5]The former versions of §§ 1441 and 1446 govern this action because plaintiff filed the state-court Complaint before the effective date of the December 7, 2011, revisions.  The historical and statutory notes to the revisions stated that "Subject to certain conditions, amendments made by Title I of Pub. L. 112-63 shall take effect upon the expiration of the 30-day period beginning on Dec. 7, 2011, and shall apply to any action or prosecution commenced on or after such effective date."  Pub. L. 112-63, § 105(a) and (b), now codified as a note accompanying 28 U.S.C. § 1332.

> with the rule of unanimity.  Earlier-served defendants may choose to join in a
> later-served defendant's motion or not, therefore preserving the rule that a notice
> of removal must have the unanimous consent of the defendants.  The unanimity
> rule alone does not command that a first-served defendant's failure to seek
> removal necessarily waives an unserved defendant's right to seek removal; <u>it only
> requires that the later-served defendant receive the consent of all then-served
> defendants at the time he files his notice of removal</u>.

*Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1207 (11th Cir. 2008).  This court also

emphasizes that the Eleventh Circuit has directed that "[l]ike all rules governing removal, <u>this

unanimity requirement must be strictly interpreted and enforced</u> because of the significant

federalism concerns arising in the context of federal removal jurisdiction."  *Russell Corp.*, 264

F.3d at 1049 (emphasis added).  Lastly, the court notes that any lack of unanimity in removal by

defendants is a procedural, not a jurisdictional, defect.  *See Hernandez v. Seminole Cnty., Fla.*,

334 F.3d 1233, 1237 (11th Cir. 2003) ("The failure to join all defendants in the petition is a

defect in the removal procedure.").

       Here, plaintiff asserts that the following defendants were properly served at the time of

the removals, but did not join in or consent to the removals: Amtec Corporation, Employers

Claims Management, Inc., U.S. Centrifuge Corporation, U.S. Centrifuge Systems, Inc., U.S.

Innovation Group, Inc., U.S. Centrifuge d/b/a U.S. Innovation Group, Inc., Ashbrook Simon-

Hartley, Ltd., Ashbrook Simon-Hartley, Ltd., d/b/a Centriquip, Ltd., Dr. William Albritton, Scott

Albritton, Gene Jordan, Tom Chandler, and Steve Ward.  (Doc. 22 at 8).  The removing

defendants do not dispute that these defendants have not expressly joined in or consented to the

removals.  Indeed, as referenced above, Amtec Corporation, Employers Claims Management,

and the individual defendants filed express notices of their lack of consent to the removals.

(Doc. 13).  However, the removing defendants contend that they were not required to obtain the

13

consent of any of the aforementioned defendants for a myriad of reasons.

First, the removing defendants contend that they were not required to obtain consent from Amtec Corporation, Employers Claims Management and the individual defendants because the claims against these defendants allegedly all arise from rights afforded under state workers' compensation laws.  (Doc. 41 at 16-19).  This argument is based on the fact that 28 U.S.C. § 1445 bars the removal to the federal Court of Claims arising under state workers' compensation laws.  (*Id*. at 18).  Additionally, the removing defendants assert that the fact that the individual defendants had default judgments entered against them in state court at the time of removal precludes the requirement of consent.  (*Id*. at 16-17).

Plaintiff responds that the removing defendants' arguments related to the existence of workers' compensation claims fail because the removal was not exclusive of the workers' compensation claims.  (Doc. 43 at 9).  Indeed, the notices of removal indicate removal of the entire action and lack any explanation for the omission of consent by the alleged workers' compensation defendants.  (Doc. 1) ("give notice of removing the above-captioned action currently pending the Circuit Court of Madison County, Alabama."); (Doc. 4) ("[U.S. Innovation Group, Inc.,] joins with the other Defendants in this case in removing the above-captioned action currently pending in the Circuit Court of Madison County, Alabama").  Further, the removing defendants have failed to submit any case law indicating that a removing party may implicitly exclude workers' compensation claims after removal of the entire action.  On the other hand, plaintiff has submitted citations to district court decisions finding that an entire case must be removed.  *See e.g.*, *Fla. Dep't. of Ins. ex rel. W. Star Ins. Co., Ltd. v. Chase Bank of Tex. Nat. Ass'n*, 243 F. Supp. 2d 1293, 1296 (N.D. Fla. 2002) ("The removal statutes generally deal with

14

an entire case, making an entire case removable or not, rather than allowing separate removal of only a portion of a case."); *Whetstone v. Unitog, Inc.*, 960 F. Supp. 267, 269 (N.D. Ala. 1997) (noting that "an entire case must be removed"); *Priest v. Sealift Servs. Int'l, Inc.*, 953 F. Supp. 363, 363 (N.D. Ala. 1997) ("Ordinarily, entire cases are removed and not parts of cases.") (citing *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1252 (11th Cir. 1988)).  Additionally, as plaintiff notes, and as demonstrated by the face of the Complaint, the claims against the individual defendants are simple common-law claims of negligence, wantonness, and willful conduct, not workers' compensation claims.  (Doc. 43 at 13).  Strictly construing the removal procedures, the court finds that the lack of any reference to the exclusion of the workers' compensation claims in the notices of removals and the lack of consent by Amtec Corporation, Employers Claims Management, Inc., Dr. William Albritton, Scott Albritton, Gene Jordan, Tom Chandler, and Steve Ward favors remand of this action.

Second, the removing defendants contend that they were not required to obtain the consent of Ashbrook Simon-Hartley, Ltd., and Ashbrook Simon-Hartley, d/b/a Centriquip, Ltd., because these defendants were contesting their service of process at the time of the removal. (Doc. 41 at 10-13).  Service on these defendants had been returned, but they had filed a Motion to Dismiss, or Alternatively, Motion to Quash Service in the state court, and this motion was pending at the time of removal.  (*Id*. at 10).  In opposition, plaintiff responds that the motion to quash service is without merit and that the existence of a pending motion to quash service does not excuse the need for the consent of these defendants.  (Doc. 43 at 10).

The court finds that the dispute about the propriety of the service of Ashbrook Simon-Hartley, Ltd., and Ashbrook Simon-Hartley, d/b/a Centriquip, Ltd., and whether consent of these

defendants was required in light of the motion to quash service favors remand.  The court finds

that the law favors a finding that consent of these defendants was required because "28 U.S.C.A.

§ 1446(a) requires that <u>all</u> defendants <u>who have been served</u> must join in the notice of removal."

*Lampkin v. Media Gen., Inc.*, 302 F. Supp. 2d 1293, 1294 (M.D. Ala. 2004) (first emphasis

original, second emphasis added) (citing *Tri-Cities Newspapers, Inc.*, 427 F.2d at 327).

In an abundance of caution, the removing defendants could have attempted to obtain the consent

of these defendants or explained their omission for the notices of removal, especially considering

the fact that the removing defendants appear to be related to these non-consenting defendants.

Because numerous cases caution that the removal statutes are to be narrowly construed and the

removing defendants bear the burden of establishing the propriety of the removal, the issues with

consent from these defendants is an additional reason to remand this action.

Third, the removing defendants contend that they were not required to obtain the consent

of defendants U.S. Centrifuge Corporation, U.S. Centrifuge Systems, Inc., and U.S. Centrifuge

d/b/a U.S. Innovation Group, Inc., because these defendants had default judgments entered

against them based upon their failure to appear, answer, or otherwise plead.  (Doc. 41 at 14).

Plaintiff responds that the removing defendants ignore her contention that other district courts

have held that "in order to excuse such consent [from defaulted defendants], the removing

defendant must allege with specificity in its petition for removal, and prove upon challenge by a

timely motion to remand, that the removing defendant has unsuccessfully exhausted all

reasonable efforts to locate the defaulted defendant to obtain its consent."  *White v. Bombardier

Corp.*, 313 F. Supp. 2d 1295, 1304 (N.D. Fla. 2004) (footnote omitted).  Plaintiff then notes that

related defendant U.S. Innovation Group, Inc., was a removing defendant (doc. 4), and, therefore,

16

no credible argument can be made that the removing defendants could not have obtained the consent of U.S. Centrifuge Corporation, U.S. Centrifuge Systems, Inc., and U.S. Centrifuge d/b/a U.S. Innovation Group, Inc.  Again, noting that removal statutes must be construed narrowly, along with the public policy favoring the setting aside of default judgments, the court finds that the lack of consent or an explanation in the notices of removal for the lack of consent is yet another reason to remand this action.

Simply put, this removal suffers from a procedural defect in the form of lack of consent by all then-served defendants.  Because plaintiff timely raised these shortcomings and the removing defendants have not adequately satisfied their burden of showing the removal complied with 28 U.S.C. § 1446, this action must be remanded to the state court.[6]

## IV.  CONCLUSION

For the foregoing reasons, plaintiff's motion to remand (doc. 21) is due to be granted, and this action is due to be remanded to the Circuit Court of Madison County, Alabama.  It is so recommended.[7]

Any objections to this Report and Recommendation shall be filed within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b)(2).

---

[6]The court need not address plaintiff's arguments that the court should exercise its discretion under 28 U.S.C. § 1441(c) and remand the action because state-law claims predominate.

[7]While the court has examined the supplemental briefing (doc. 53-55), the relevant facts and issues presented in *Judy A. Hawke v. U.S. Centrifuge Systems, LLC*, 5:12-cv-1857-IPJ, are distinguishable from those in this case.

**DONE**, this the 30th day of July, 2012.

JOHN E. OTT
United States Magistrate Judge